No. 18,306.

KING SOOPERS, INC. *v.* GLOYD M. MITCHELL.
(342 P. [2d] 1006)

Decided August 3, 1959.   Rehearing denied August 31, 1959.

Messrs. SHELDON & NORDMARK, Mr. PAUL C. BROWN, for plaintiff in error.

Mr. WENDELL A. PETERS, Mr. C. HAMILTON EVANS, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, operator of a grocery supermarket, was the defendant in the trial court in an action in which the plaintiff obtained a personal injury judgment in the amount of $10,000. The action grew out of plaintiff's falling on some ice in a parking lot which was maintained by the defendant adjacent to its store for the use of customers. The plaintiff suffered a broken hip which necessitated an internal reduction operation. Defendant claims that the evidence was insufficient and that plaintiff was guilty of contributory negligence as a matter of law. On these grounds it seeks reversal of the judgment.

The fall and the injuries occurred on March 26, 1955, while plaintiff was walking out of the store of the defendant carrying a bag of groceries. He was using both hands to carry the bag although he admitted that he could have handled it with one hand. His car had been parked in defendant's parking lot in the third row of cars from the defendant's building and in the second row from the sidewalk which runs alongside the parking lot and in front of the market.

Plaintiff testified that he noticed the icy condition of the parking lot when he arrived and parked his car and that upon alighting from his automobile he walked around in back of the car and warned his wife of the

danger. He testified that they threaded their way through the other lines of cars and entered the store without mishap. After finishing his shopping and while on his way back to the car he followed a more direct route (which proved more hazardous) and talked to a friend as he walked along. The slippery place on which he fell was described by plaintiff, his wife and the person to whom plaintiff was talking as about two feet square and as having a ridge three to four inches in height around the edge of it and as being covered with snow. Around this icy area was blacktop which had become wet from the thawing which had been taking place that morning. He testified that he either did not see it or did not recognize it as slippery. There was a slope from the ridge downward and when he stepped on this he slipped sideways onto his right hip. On the evening of March 24, two days before the injury, plaintiff had stopped at defendant's store on his way home from work and he then noticed ice and snow in the parking lot. He also said that there was ice and snow around his home when he arrived there. The following day, he said, it was very cold. On the morning of the 26th, the date of the injury, he observed considerable ice and snow in the defendant's parking lot as he drove up.

There is no evidence indicating that the defendant had actual notice of the condition existing at the place where the accident occurred. There is testimony, however, that there had been snowy, icy weather from March 23 until March 26, 1955, the day on which the injury occurred. The plaintiff and his wife both testified to this and the weather reports of the United States Weather Bureau, which were received in evidence by stipulation and which are summarized in an exhibit, showed intermittent snowfall and freezing temperatures during the entire period preceding the injury.

Testimony on behalf of the defendant was given by the manager of the store. He stated that he did not recall what the weather conditions were during the period

in question. He testified that snow was regularly cleared from the *sidewalk areas*. The indications were that no effort was made to clear the parking lot proper nor were signs warning of danger posted.

1. *The Sufficiency of the Evidence to Render the Question of Defendant's Negligence One of Fact for the Jury.*

Defendant admits that the plaintiff was a business visitor or invitee on its premises but contends that the evidence is insufficient to establish its negligence. The failure of plaintiff to prove that defendant had actual notice of the condition or that the condition had existed for a sufficient length of time to require a conclusion that defendant had constructive notice thereof is said to be fatal to plaintiff's case. Defendant admits that "The defendant's employees did nothing to disturb the natural condition of the snow as it existed on the surface of the parking lot," and further explains its position as follows:

"It is abundantly clear that the condition of ice in the parking lot was not caused, created or contributed to by any act or neglect of the Company. The plaintiff does not claim that defendant is responsible for causing the snowfall or creating the general conditions. There is no claim or evidence that any defect in the construction or repair of the parking lot or building contributed in any way to the incident. Hence the neglect or negligence of defendant, if any, can only be in the failure to remove the particular ice condition or 'spot of ice' upon which plaintiff slipped. From plaintiff's own testimony, it is evident that the dangerous character of the piece of ice was not readily and obviously apparent, as it was obscured by a covering of snow. There is not a scintilla of evidence in the record as to how long the condition existed; nor is there any evidence of defendant's actual knowledge of this condition."

In denying the defendant's motion for judgment notwithstanding the verdict, the trial judge observed:

"The defendant relies heavily on our Supreme Court

decision in *Carleton Brent, et al. v. Bank of Aurora,* 132 Colorado 577, and it is to be admitted that this ruling gave the Court great concern. However, the Court believes that there is a distinction between the instant case and the so-called Bank of Aurora case, in that apparently in the Bank of Aurora case there was no way of determining when the ice was formed and apparently such ice was a mere slippery spot, whereas in the instant case we are able to determine from Plaintiff's Exhibit C that snow commenced falling on March 23d, 1955, at 6:35 a.m., and continued falling until approximately noon of March 25th; that during said period there were melting temperatures, but after the snow ceased at noon of March 25th, the temperature dropped well below freezing and continued at such temperature until after the accident at 9:30 a.m., March 26th.

"It would require a strained interpretation of this exhibit to hold that the defendant did not have knowledge of the existence of the moisture, snow, and ice which prevailed for approximately three days previous to the accident, and that the same would create a dangerous condition for customers using the parking lot, it being common knowledge that where snow melts and is followed by freezing temperatures, ice will form.

"In the instant case the evidence shows that the patch of ice was not just an ordinary patch of ice, but was an accumulation of ice about two feet square, containing a ridge about three or four inches high, and covered with a light covering of snow, thereby presenting not just a slippery spot, but an actual obstruction to people walking between cars to get to their own cars.

"No facts of similar nature were involved in the so-called Bank of Aurora case."

Here also defendant relies on *Brent v. Bank of Aurora,* 132 Colo. 577, 291 P. (2d) 391. But we agree with the conclusion of the trial court that that case is distinguished from the case at bar. The lack of evidence to form a basis for jury determination that the condition

had existed for any length of time was there the determining factor. The Court pointed out that the burden was upon the plaintiff to establish that the condition complained of was present for a time of sufficient duration prior to the accident to enable a prudent man to discover and remedy it. Another distinguishing fact is the more hazardous condition apparent here, created by the snow covering the ice. Furthermore, the icy area in the present case sloped downward from the ridge so as to create a risk to a person carrying a sack of groceries. The additional fact that defendant here seemingly made no effort to clear the areas or to give warning convinces us that neither *Brent v. Bank of Aurora,* supra, nor the decision of the Court in *F. W. Woolworth v. Peet,* 132 Colo. 11, 284 P. (2d) 659 (which was relied on in the Brent case) are here applicable.

The Restatement of the Law of Torts, Sec. 343, sets forth the standards applicable to the relationship of landowner and business visitor with respect to a hazardous condition (as distinguished from active forces). It declares that the landowner is subject to liability for harm caused by the natural or artificial condition if (a) he knows or by the exercise of reasonable care could discover the condition, (b) has no reason to believe that the condition will be discovered, (c) invites entry upon the land without (1) making the condition safe, or (2) giving a warning. On the subject now before us, that is, the extent of the duty of the landowner to discover dangers, the authors declare (under comment (a), Sec. 343, p. 939):

"* * * Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions."

Our cases also recognize that the landowner, in discharging his duty to a business visitor, is obligated to exercise reasonable care to *discover* perils. *John Thompson Grocery Co. v. Phillips,* 22 Colo. App. 428, 125

Pac. 563; *Peters v. Schillig-Scott Lumber Co.,* 107 Colo. 310, 111 P. (2d) 898; *Rudolph v. Elder,* 105 Colo. 105; 95 P. (2d) 827; *Scott v. Greeley Joslin's Store Co.,* 125 Colo. 367, 243 P. (2d) 394. This duty of discovery is not satisfied by the simple expedient seemingly followed here of ignoring the hazard.

Much emphasis is given to the fact that the icy condition of the area was obvious. We fail to perceive the significance of this factor in the present circumstances. Where a grocery shopper must cross a supermarket parking lot heavily laden with goods purchased in order to board his automobile it is of little help to him to be aware of the presence of ice along the way. Under these circumstances the likelihood of injury is not lessened by his knowledge and the degree of care which he exercises. Many cases recognize this. Some of these are collected in *Prosser on Torts,* p. 459, where the author says:

"* * * Ordinarily nothing more than a warning is required. All of the circumstances, however, must be taken into account; and where the condition is one which the invitee would not expect to find in the particular place, or his attention is distracted by something on the premises, or the condition is one such as icy steps, which cannot be encountered with reasonable safety even though the invitee is aware of it, the jury may be permitted to find that obviousness, warning or even knowledge is not enough."

Professor James in an article in 63 Yale Law Journal, pp. 605-626, also comments on this special situation and concludes that the landowner is negligent under circumstances like those present here even though the hazard was apparent to the business visitor.

The Supreme Court of Pennsylvania in *Seng v. American Stores Company,* 384 Pa. 338, 121 Atl. (2d) 123, discussed the special legal significance of the grocery store customers being burdened with packages as follows:

"It is unnecessary to dwell on the fact that getting

groceries out of a store is just as important a part of the shopping operation as paying for them, and that a duty devolves upon the store owner to keep his building approaches as safe as the interior of his establishment. Nothing can be more common to the eye than customers leaving a grocery store laden with packages. It could even be said that it would be more unusual for a customer to leave any one of the modern markets empty-handed than to see one depart loaded down as was Mrs. Seng. Nor can it be said that it is unforseeable that a customer might well be so burdened with parcels that his vision for the terrain at his feet would be somewhat limited and impaired. * * *"

▆ A store owner could not justifiably wax its floors and aisles to the extent that falls were inevitable and escape liability on the ground that the hazard was obvious. There is substantial similarity between this example and the instant facts. In the case at bar we think the evidence was sufficient to compel submission of the question of defendant's negligence to the jury and the trial court was correct in so ruling.

2. *Whether Defendant was Guilty of Contributory Negligence as a Matter of Law.*

Defendant argues that "Plaintiff stands convicted of negligence by his own testimony in having deliberately chosen a dangerous route, when by a step or two to one side he could have avoided the spot of snow-covered ice."

▆ Looking backward to the happening, it is always possible to say that a party could have avoided the accident and injury, but such is not the test of contributory negligence. The question is whether the plaintiff by his conduct can be said, as a matter of law, to have exposed himself to an unreasonable risk of harm. The particular circumstance that this was a grocery store parking lot; that the plaintiff's ground vision was (by defendant) foreseeably handicapped by his purchases; that the icy condition of the lot was general (so that there was no absolutely safe route); that plaintiff had no free choice

about walking through the lot, and the admission of defendant that it "did nothing to disturb the natural condition of the snow as it existed on the surface of the parking lot" combine to make the question of contributory negligence a disputed one for the jury. *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 128 Pac. 460, *Catlett v. The Colorado & S. Ry. Co.,* 56 Colo. 463, 139 Pac. 14; *Sprague v. Herbel,* 90 Colo. 134, 6 P. (2d) 930, 931; *Scott v. Matsuda,* 127 Colo. 267, 255 P. (2d) 403; *City of Boulder v. Maren N. Burns, et al.,* 135 Colo. 561, 313 P. (2d) 712; *Peterson v. Kessler,* 135 Colo. 102, 308 P. (2d) 610. The language of the Court per Justice Moore in the *Peterson case* is fully applicable here.

"* * * In the instant case the jury, under proper instructions to which no error is assigned, adjudged defendant to be guilty of negligence which was the proximate cause of plaintiffs' injuries, and by its verdicts found them to be free from contributory negligence. From the evidence appearing in the record before us, different conclusions might be drawn by fair-minded men. The case was tried before a capable judge who heard and overruled defendant's motion for judgment notwithstanding the verdict. Under the circumstances we cannot say as a matter of law that plaintiffs failed to prove negligence on the part of defendant, nor can we say that plaintiffs were shown to be guilty of contributory negligence as a matter of law."

Accordingly, the judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ not participating.