No. 21209.

PALMER PARK GARDENS, INC. *v.* ELIZABETH POTTER.
(425 P.2d 268)

Decided March 20, 1967.

RECTOR and KANE, for plaintiff in error.

DONALD E. LaMORA, ALLEN T. COMPTON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

MRS. POTTER, the plaintiff below, having recovered a judgment for personal injuries in the trial court, is the defendant in error. The defendant below, the plaintiff in error, seeks to reverse the adverse judgment. The parties will be referred to by name or as they were designated below.

Palmer Park Gardens is an apartment house complex in Colorado Springs. At and prior to the incident in question, the daughter and son-in-law of the plaintiff were tenants of the defendant. Plaintiff is a former tenant. The walks and parking areas within the boundary lines of the complex were for the use and convenience of tenants and their guests.

The defendant employed a manager, Mrs. Clark, and two maintenance men. In general, it was the latter's responsibility to clean all public areas within the complex. The defendant provided snow removal equipment

for their use. A few days prior to March 2, 1962, there had been a snow fall. The two maintenance men had cleared the sidewalks of all snow. Although it was the custom to clear the parking lot of snow, it was not cleared on this occasion. By 9:00 A.M., on March 2, 1962, very few cars remained in the parking area. When plaintiff arrived between 12:00 noon and 1:00 P.M. on that date, one car remained in this lot. The plaintiff alleged in her complaint that the "defendant had negligently and carelessly permitted ice and snow to accumulate upon said parking ground thereby creating a dangerous and hazardous condition for any person who had occasion to use said parking lot. . . ."

On March 2, 1962, at about noon, the plaintiff, preparatory to a visit with her daughter, parked her automobile in the parking area nearest to the daughter's apartment unit. March 2, 1962, was a warm, sunny day; nevertheless, as a result of the prior snow, the parking lot was interspersed with areas of snow, slush, melted snow, and dry spots. Because of the warm days and cold nights, ice apparently had formed under the snow.

In order to avoid alighting in an accumulation of snow on the driver's side, plaintiff got out of her automobile on the passenger side where it was only two or three inches deep. She elected to walk on the snow rather than in the slush or water. After having taken a few steps her "feet slipped out from under" her and she "fell flat on" her back, causing the injuries complained of.

The foregoing capsuled facts alleged in the complaint and competent evidence was introduced in support of the allegations.

The answer denied generally the allegations of the complaint. Affirmatively the defendant alleged assumption of risk by plaintiff; contributory negligence; that the accident was caused by her sole negligence; and unavoidable accident. The defendant produced evidence which, if believed by the jury, would have entitled it to a verdict.

In the interest of brevity various assignments of error which are subject to common treatment will be grouped together for discussion and disposition. This treatment, however, is not consistent with the sequence in which the alleged errors are treated in the brief of plaintiff in error.

## I.

Defendant assigns as error the trial court's refusal to direct a verdict for the defendant at the close of the evidence. Reliance for reversal is based upon the trial court's failure to apply to this defendant the standard of care required of municipalities in the maintenance of sidewalks. The same basis for error is alleged to exist in some of the court's instructions to the jury, so what we say here is also applicable to those assignments.

It is basic that on a motion by the defendant for a directed verdict, the court must view the evidence in a light most favorable to the plaintiff. Here, there was competent evidence substantiating the essential allegations of the complaint which required the court to submit the issues to the jury. *Gray v. Turner*, 142 Colo. 340, 350 P.2d 1043; *Bailey v. King Soopers*, 142 Colo. 338, 350 P.2d 810; *Swanson v. Martin*, 120 Colo. 361, 209 P.2d 917.

It is well-settled that the law imposes a higher standard of care appertaining to the landlord-invitee relationship than applies to municipal corporations with reference to the common use of its sidewalks. We held in *King Soopers v. Mitchell*, 140 Colo. 119, 342 P.2d 1006, that a landowner is subject to liability for harm to an invitee caused by the natural or artificial condition of his premises, if he knows or by the exercise of reasonable care should discover the condition, and fails to make the condition safe. This rule may be contrasted with that laid down in *Beezley v. Olson*, 129 Colo. 406, 270 P.2d 758, where the court said that the presence of snow or ice on a sidewalk was not actionable unless it had sufficiently accumulated so as to cause one to fall and that

*the accumulation had existed long enough for the city
to have constructive notice.* See also, Archambeau, Jr.,
*Municipal Tort Immunity in Colorado,* 37 Dicta 133, 148.

It was admitted by defendant that the parking
area was intended for the use of both tenants and their
guests. Accordingly, we hold that the plaintiff was an
invitee, thereby making defendant subject to the rule
on standard of care set forth in *King Soopers v. Mitchell,
supra.*

## II.

The defendant tendered ten instructions. The
court refused to give them *in haec verba.* It would un-
duly burden this opinion to review and analyze the con-
tent of each of the tendered instructions and compare
them with those given by the court. Suffice it to say
that every proposition of law contained in the proffer
by the defendant, and to which we believe it was en-
titled, was correctly stated by the court in the instruc-
tions given.

## III.

The defendant challenges the correctness of instruc-
tions numbered 13, 14, 15 and 16, which the court gave
on its own motion. Because of their importance to the
issues here, they will be treated separately.

Complaint is made that the court, in Instruction No.
13, in effect instructed the jury that, under the circum-
stances, the plaintiff's status was that of an invitee, but
that the court (1) failed to define "invitee," and also
that it (2) failed to advise the jury of the legal effect
of being an invitee.

Instruction No. 13 is itself a complete answer to
the first attack upon it. It advised the jury that:

". . . if you find from the evidence that the plaintiff
. . . visited the apartment building owned and operated
by the defendant at the express or implied invitation of
her daughter who was a tenant therein, then you are
instructed that plaintiff's legal status was that of an
invitee."

Moreover, the legal effect of the "invitee status" was adequately covered in other instructions. See, *infra.,* the discussion regarding Instruction No. 15.

Defendant complains of Instruction No. 14, pertaining to plaintiff's preexisting physical condition, the apportionment of damages and the burden of proof in relation thereto. Yet, no cases are cited in support of its allegation of error. We find no error in this regard since the court substantially followed the law of this state as set forth in *Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811.

The defendant asserts that Instruction No. 15, which sets forth the legal responsibility of a landlord to an invitee, is faulty because "it does not further instruct as to assumption of risk and contributory negligence." There is no merit to such a contention because these propositions were adequately covered in other instructions given by the court.

Finally, defendant charges that Instruction No. 16 improperly stated the law relating to the standards applicable to landlord and invitee with respect to a hazardous condition. Its position is that the effect of the instruction was to "make the defendant an insurer of the safety of the plaintiff." As to this point, however, it appears that the court adhered to Colorado law as previously enunciated. See, *Price v. The Central Assembly,* 144 Colo. 297, 356 P.2d 240; *Tucker v. Dixon,* 144 Colo. 79, 355 P.2d 79; *King Soopers v. Mitchell,* 140 Colo. 119, 342 P.2d 1006.

### IV.

The defendant contends that the court received in evidence statements of account for services of the doctors who treated the plaintiff, without any foundation testimony being offered as to the reasonable value of the services for which such charges were made. Defendant predicates error upon this omission.

This court, adopting the language in the case of *Townsend v. Keith,* 34 Cal. App. 564, 168 Pac. 402, held in

*Kendall v. Hargrave*, 142 Colo. 120, 349 P.2d 993, that:

". . . While the correct measure of damages is the necessary and reasonable value of the services rendered, rather than the amount which may have been paid for such services, nevertheless the amount paid for services is some evidence of their reasonable value."

 Defendant also complains of the admission into evidence of a statement of account showing the cost of "an extra firm mattress and inner spring," which plaintiff stated she had purchased as a result of the accident. There was medical testimony tending to prove that the use of a firm mattress was part of the treatment for plaintiff's injured back. We hold that the court properly permitted the jury to consider whether this was a reasonable expense which plaintiff incurred as the result of the injuries she sustained in the fall on the ice.

## V.

 Defendant in its brief asserts that, "Though Dr. Fisher, treating physician, failed and refused to prepare written reports concerning his treatment of the Plaintiff, the Court allowed him to testify. . . ." over objection by the defendant. As to this point, the record discloses that the plaintiff had furnished, by agreement, the only report prepared by Dr. Fisher of a medical examination of the plaintiff. Again referring to the brief, defendant states: ". . . The report was over nine months old and certainly of small probative value when the witness was still treating the Plaintiff."

The defendant relies on R. C. P. Colo. 35 (b) to support the foregoing contention. We believe that it misapprehends rule 35 (b). The rule is clear and unequivocal as to both its application and scope. The pertinent part of Rule 35 (b) reads:

". . . After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined *a like report of any examination*, previously or thereafter made, of

the same mental or physical examination." (Emphasis added.)

The record indicates that there were no other reports of either prior or subsequent examinations, so obviously no later one could have been furnished. Dr. Fisher had seen the plaintiff for purposes of treatment only.

Historically, the Colorado rule was modeled after Rule 35 of the Federal Rules of Civil Procedure, and is identical, except for a waiver of privilege provision which was not adopted by Colorado and which is not pertinent here.

In *Butts v. Sears, Roebuck & Co.*, 9 F. R. D. 58, Holtzoff, J., dealt with the rule under similar circumstances. After citing Rule 35(b)(1), the court continues:

"Relying on this provision, the defendant now moves for copies of reports made by the plaintiff's personal physician. In addition, however, the defendant requests copies of hospital records, copies of office records of various physicians who have treated the plaintiff on various occasions, copies of records of various optometrists, and the like.

"The Rule must be reasonably construed. It does not place upon a party the burden of procuring copies of records of hospitals or of office records of physicians. *It is limited to medical examinations conducted at the request of the party, and the reports, copies of which are subject to production, are the reports made by the physician as the result of such an examination.*" (Emphasis added.)

For the reasons set forth, we also find no merit to defendant's position on this point.

## VI.

The last assignment of error for our consideration relates to a pre-trial order of the court which permitted the plaintiff to amend her complaint in order to change the location of the place where she allegedly slipped and fell. The defendant claimed surprise as to

this matter. In this regard the clerk's record shows the following proceedings on November 22, 1963:

"Plaintiff moves to amend paragraph #2 of her complaint; Arguments; Court finds and orders as follows:

"Court finds that the Court has had the opportunity to read the entire file in this case, including Pre-Trial Statements that have been submitted and finds that there would be no prejudice in allowing the amendment, and that the amendment should be made...."

This order was four days prior to trial. R. C. P. Colo. 15(a) provides in pertinent part that "... a party may amend his pleading only *by leave of court* or by written consent of the adverse party...." (Emphasis added.) See also, Rule 15(b).

The defendant having failed to point out an abuse of discretion on the part of the trial court in regard to this assignment of error, we hold that there was no error.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.