2012 COA 215

**Michelle BANNING, Plaintiff–Appellant and Cross–Appellee,**

v.

**William T. PRESTER, Defendant–Appellee and Cross–Appellant.**

**Nos. 11CA1093, 11CA2210.**

Colorado Court of Appeals, Div. II.

Dec. 27, 2012.

Bendinelli Law Office P.C., Marc F. Bendinelli, Westminster, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Wick & Trautwein, LLC, Robin L. Wick, Kimberly B. Schutt, Fort Collins, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge CASEBOLT.

¶ 1 In this automobile accident case, plaintiff, Michelle Banning, appeals the judgment awarding her damages following a jury verdict against defendant, William T. Prester. She contends the court erred in giving a jury instruction concerning mitigation of damages and in admitting certain evidence. Prester cross-appeals, contending that the trial court should have offset his recovery of costs against the judgment for Banning instead of entering two separate judgments. We reverse both judgments and remand for a new trial.

## I. Facts

¶ 2 Prester negligently drove his vehicle, causing a low speed rear-end collision with Banning's vehicle. Although Banning did not seek medical attention on the day of the collision, she saw her primary care doctor several days later, complaining of neck and back pain. She thereafter saw several other doctors and started treatment with a chiro-

practor. Eventually, her billed medical expenses reached almost $140,000.

¶ 3 After Banning commenced this litigation, Prester admitted liability, but disputed the nature and extent of Banning's damages. He also raised the affirmative defense of failure to mitigate damages, contending at trial that Banning failed to follow through with recommended physical therapy, continued to smoke against her doctor's advice, and pursued expensive treatment when it was not improving her pain symptoms.

¶ 4 At trial, Banning presented evidence of $139,050 in medical and related expenses and $5,425 of out-of-pocket expenses, and she requested an amount of future damages to be determined by the jury based on testimony of her expert. The jury returned a verdict of $30,000 in economic damages and $50,000 in noneconomic damages.

¶ 5 Banning sought prejudgment interest on the award. Prester sought an award of costs pursuant to section 13–17–102, C.R.S. 2012, contending that the verdict did not exceed his statutory settlement offer of $140,000, thus entitling him to costs incurred after the offer of settlement. The trial court entered two separate judgments, awarding costs in favor of Prester of $19,479.11, and entering a total judgment for Banning, which included interest, in the amount of $116,044.15. Prester filed a motion requesting the court to enter a net judgment, which the trial court denied. This appeal and cross-appeal ensued.

## II. Mitigation Instruction

¶ 6 Banning asserts that the trial court erred in instructing the jury concerning Prester's mitigation of damages defense by allowing the jury to find she failed to mitigate if she "continued to undergo expensive treatment when it was not resolving her pain." She argues that this instruction did not accurately state the law concerning mitigation of damages and that the jury had already been instructed to determine the amount of her reasonable and necessary medical and hospital expenses. We agree.

### A. Preservation

¶ 7 Initially, we address and reject Prester's assertion that Banning failed to preserve her objection to the mitigation instruction. Although Banning did not initially object to this instruction during the jury instruction conference, she objected before the trial court read it to the jury. Banning's counsel stated, "Yesterday when we were going through the instructions, I struck out No. 2 [of the mitigation instruction], which is 'continues to undergo expensive treatment.' It has nothing to do with mitigation." After a bench conference, the court concluded that it would not modify the instruction, but it also noted that Banning had made her objection for the record.

¶ 8 We conclude Banning adequately preserved her objection. *See* C.R.C.P. 51 (party must object before instruction given to jury); *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo.App.2009) (same).

### B. Standard of Review

¶ 9 Trial courts have a duty to correctly instruct juries on all matters of law. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). We review de novo whether the instructions as a whole accurately inform the jury of the governing law. *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007). However, we review for abuse of discretion a trial court's decision to give a particular jury instruction. *Id.* A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Kendrick v. Pippin*, 252 P.3d 1052, 1061 (Colo. 2011).

¶ 10 Language in a jury instruction cannot be a ground for reversal unless it prejudices a party's substantial rights. *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1378 (Colo.App.1996). Prejudicial error in an instruction exists when the record shows that a jury might have answered differently if a proper instruction had been given. *Id.*

### C. Law

¶ 11 An injured party has the duty to take such steps as are reasonable under

the circumstances to mitigate the damages sustained. Thus, a plaintiff may not recover damages for injuries that might reasonably have been avoided. *Harsh v. Cure Feeders, L.L.C.,* 116 P.3d 1286, 1288 (Colo.App.2005); *see also City of Westminster v. Centric–Jones Constructors,* 100 P.3d 472, 480 (Colo. App.2003).

■ ¶ 12 In the personal injury context, a failure to mitigate usually concerns a plaintiff's unreasonable failure to seek medical advice or unreasonable failure to follow that medical advice once received. *See Lascano v. Vowell,* 940 P.2d 977, 983 (Colo.App.1996) (before jury could reduce plaintiff's damages on grounds that she failed to mitigate by failing to follow her doctor's advice, jury was required to find plaintiff's decisions in that regard were unreasonable); *Hildyard v. Western Fasteners, Inc.,* 33 Colo.App. 396, 403, 522 P.2d 596, 600 (1974) (plaintiff's obligation to mitigate damages did not require him to submit to surgery that involved substantial hazards or offered only a possibility of cure); Dan B. Dobbs, *The Law of Torts* § 203 (2000) (plaintiff who unreasonably delays in obtaining medical attention for her injury or who unreasonably refuses to follow medical advice cannot recover for exacerbation of injury resulting from her own delay or refusal).

### D. Application

¶ 13 The trial court instructed the jury, as pertinent here, that Prester had proved his failure to mitigate damages defense if it found that Banning "continued to undergo expensive treatment when it was not resolving her pain." The court further instructed that, if it so found, the jury must "determine the amount of damages caused by plaintiff's failure to take such reasonable steps," which "amount must not be included in any award of damages."

¶ 14 The parties have not cited, nor have we found, any Colorado case law or cases from other jurisdictions holding that a plaintiff has an affirmative duty to cease medical treatment when it is "expensive" and "fails to resolve a complaint of pain." *See* CJI–Civ. 4th 5:2 (1998) (instructing court to insert in failure to mitigate instruction an appropriate

description of that conduct which, under the applicable law, the plaintiff had an affirmative duty to undertake in order to mitigate any particular damages); *see also* C.R.C.P. 51.1(1) (court shall generally use instructions contained in the Colorado Jury Instructions that apply to the evidence under the prevailing law); *Yampa Valley Elec. Ass'n v. Telecky,* 862 P.2d 252, 256–57 (Colo.1993) (where no statute or rule supported the presumption created by a jury instruction, the presumption could only be proper if it was supported by common law principles); *Federal Ins. Co. v. Public Serv. Co.,* 194 Colo. 107, 110, 570 P.2d 239, 241 (1977) (trial court has the duty to examine the prevailing law to determine whether a jury instruction in the Colorado Jury Instructions is applicable to the facts of the particular case and states the prevailing law); *Felder v. Union Pac. R.R. Co.,* 660 P.2d 911, 914 (Colo.App.1982) (a party is not entitled to an instruction that contains an incorrect statement of the applicable law).

■ ¶ 15 Nor can we find any treatises that analyze whether such an affirmative duty has been recognized. *See* C. McCormick, *Law of Damages* § 36 (1935) (stating general rule concerning mitigation of personal injury damages as "any suffering or disability incurred by one who has sustained personal injury, when the same could have been avoided by submitting to treatment by a physician selected with reasonable care, must be excluded as a ground of recovery"). Instead, the law recognizes that an injured party, who incurs expense in pursuing reasonable efforts to avoid or minimize the damaging effects of another's wrong, may recover for such expense as one of the items of damage for the wrong. *See Gundersons, Inc. v. Tull,* 678 P.2d 1061, 1065 (Colo.App. 1983) *aff'd in part and rev'd in part,* 709 P.2d 940 (Colo.1985); McCormick, § 42.

■ ¶ 16 Because there is no common law or other authority to support the asserted affirmative duty, we conclude the court erred in so instructing the jury.

■ ¶ 17 Furthermore, mitigation of damages instructions in personal injury cases typically have focused on inaction of the in-

jured party, such as failing to seek medical treatment or failing to follow medical advice. *See Lascano,* 940 P.2d at 983; *Hildyard,* 33 Colo.App. at 403, 522 P.2d at 600. Here, the asserted failure to mitigate did not focus on Banning's inaction. Indeed, Banning testified that she experienced pain relief after obtaining the injections at issue, but was forced to discontinue them because of their cost. Instead, the instruction focused the jury's attention on the actions of the physician who provided the treatment and care.

¶ 18 In addition, the jury also received a separate instruction requiring it to determine whether Banning's medical expenses were reasonable and necessary. *See Lawson v. Safeway, Inc.,* 878 P.2d 127, 130–31 (Colo. App.1994) (to recover damages for medical expenses incurred, a plaintiff must show that the expenses resulted from the defendant's negligence, and must prove the "necessary and reasonable value of the services rendered" (quoting *Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 185, 425 P.2d 268, 272 (1967))). The mitigation instruction given here restated and expanded on the "reasonable and necessary" instruction without any legal basis to do so, providing Prester with "two bites at the apple," and may have allowed the jury to further reduce the amount of Banning's recoverable medical expenses. *See Francis v. Dahl,* 107 P.3d 1171 1174 (Colo.App.2005) (when improper mitigation of damages instruction directed jury to deduct from its award any amount caused by plaintiff's failure to mitigate, but did not require the jury to specify the amount of any such deduction, court had no basis for determining to what extent the final award of damages was predicated upon the jury's finding of a failure to mitigate; therefore, prejudice to plaintiff was presumed, requiring a new trial on damages).

¶ 19 Thus, we conclude that the erroneous instruction was prejudicial to Banning. While a plaintiff must present evidence concerning the reasonableness and necessity of medical expenses, conflating those factors with a failure to mitigate instruction based on the same theory essentially misleads the jury. Indeed, Prester admits that it cannot be known "for certain whether the jury's award of $30,000 for economic damages was based on a determination that the actual amount of medical expenses incurred by Banning was not medically reasonable or necessary, or whether it was based on a conclusion [that] she failed to mitigate her damages."

¶ 20 Accordingly, we must remand for a new trial on damages. If defendant again asserts Banning's failure to mitigate damages and presents sufficient evidence thereon, the court should not instruct the jury that Banning's continuing to receive expensive treatment that was not resolving her pain constitutes a failure to mitigate her damages. *See Williams,* 928 P.2d at 1378. Instead, Prester may again assert that Banning has failed to prove that those medical expenses were reasonable and necessary.

██ ¶ 21 Furthermore,

[w]henever a new trial must be held on one issue, a new trial must also be held with respect to other issues unless "the issue to be retried is entirely distinct and separable from the other issues involved in the case and ... a partial retrial can be had without injustice to any party."

*Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 934 (Colo.1997) (quoting *Bassett v. O'Dell,* 178 Colo. 425, 427, 498 P.2d 1134, 1135 (1972)).

¶ 22 Here, the sole issue in the case was damages and the jury awarded both economic and noneconomic damages. We conclude that the mitigation issue involves both economic and noneconomic damages because the erroneous instruction related to both Banning's medical bills and the award her for pain and suffering. *See Kepley v. Kim,* 843 P.2d 133, 138 (Colo.App.1992) (granting a new trial on damages because the jury award of several thousand dollars for economic damages for treatment related to pain was inconsistent with a zero award for noneconomic damages for pain and suffering).

### III. Evidence of Health Insurance Payments

¶ 23 Banning contends that the trial court erred in admitting evidence of amounts her health insurer paid to her medical providers. Specifically, she argues that this evidence

violated the common law collateral source rule and section 13–21–111.6, C.R.S.2012. Because we are reversing the judgment and remanding for a new trial, we need not address the merits of this contention. Even so, if the issue arises again on remand, we direct the court to apply the collateral source rule as set forth in *Wal–Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶¶ 8–13, 276 P.3d 562 (evidence of amounts paid by injured plaintiff's insurer was inadmissible under the collateral source rule).

## IV. Lien and Injury Finance Evidence

¶ 24 Banning asserts that the trial court erred in admitting evidence that her health care providers held liens on any judgment she might receive because such evidence violated the collateral source rule. We conclude that Banning failed to adequately preserve this argument and decline to address it.

¶ 25 Here, Prester filed a motion in limine before trial, arguing that the existence of any lien held by a health care provider was not a collateral source and would be admissible at trial to impeach Banning's health care providers. Banning did not object or respond to the motion, and the trial court determined that she had confessed it.

¶ 26 At trial, Banning asked the trial court to reconsider admission of such evidence, but the court declined, noting that Banning had confessed the motion in limine and had already elicited information about the lien from a witness.

¶ 27 Based on these circumstances, we conclude Banning did not preserve the issue for appellate review. *See Robinson*, 209 P.3d at 1195 (declining to address argument because it was not preserved and the alleged error was not sufficiently compelling to justify civil plain error review). We also note that the trial court may wish to reconsider this issue on remand in light of *Crossgrove*.

## V. Doctor's Expert Testimony

¶ 28 Banning asserts that the trial court erred when it allowed Dr. Lambden, Prester's expert witness, to provide testimony about the "delta forces" involved in the acci-

dent, as well as testimony concerning Banning's history of being subjected to domestic abuse. Because the issue is preserved and will undoubtedly arise again on remand, we address, and reject, the contention.

### A. Preservation

¶ 29 Prester contends that Banning did not preserve this issue for appeal. However, Banning objected to Dr. Lambden's testimony about delta forces related to the accident, thereby preserving her appellate argument on those grounds. In addition, Banning filed a pretrial motion in limine to preclude the introduction of domestic abuse evidence. This sufficiently preserved her objection. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330–31 (Colo.1986) (pretrial motion in limine sufficiently preserves an issue for appeal and contemporaneous trial objection unnecessary).

### B. Standard of Review

¶ 30 We review a trial court's evidentiary rulings for an abuse of discretion. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1250–51 (Colo.1994). An abuse of discretion occurs only if the ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

### C. Law

¶ 31 Under CRE 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under CRE 403, evidence, even if relevant, may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 32 When a trial court sustains an objection, thereby finding evidence to be inadmissible, it is error for a party to present the evidence to the jury. *People v. Oliver*, 745 P.2d 222, 228 (Colo.1987).

## D.   Application

¶ 33 Here, Prester asked Dr. Lambden whether Banning had a spinal facet injury as a result of the accident. Dr. Lambden opined that she did not, and then started to testify concerning the delta forces involved in the accident. Banning objected, and the trial court sustained the objection, ruling that Dr. Lambden was not permitted to discuss delta forces. Nevertheless, Banning asserts that Dr. Lambden continued to discuss the subject.

¶ 34 Our review of the record does not support Banning's contention. After the trial court instructed Dr. Lambden to limit his testimony about delta forces, he did not depart from the trial court's directive. Instead he testified that, as a doctor, one of the factors he considers in making a diagnosis is the mechanism of injury, and that a spinal facet injury is less likely to occur in a low velocity accident because there is no substantial extension of the cervical spine. Dr. Lambden did not mention delta forces again. As a physician, Dr. Lambden was qualified to testify about the medical aspects of an injury, and the record indicates that he so limited his testimony.

¶ 35 Banning also asserts the court erred in allowing Dr. Lambden to testify that she had suffered from domestic abuse in past relationships. As noted, Banning filed a motion in limine on this issue prior to trial. Prester responded, seeking admission of the evidence to explain the psychological component underlying what Prester contended was delayed recovery syndrome. The trial court reserved ruling on the motion.

¶ 36 At trial, the court noted that Dr. Gappa, one of Banning's witnesses, had referenced "domestic issues" in his chart after seeing Banning. The trial court allowed Prester to ask Dr. Gappa if he explored the issues of Banning's depression and its causes when he noted "domestic issues" in her medical records. The trial court also allowed Dr. Lambden to refer to the issue in terms of delayed recovery syndrome, but precluded him from discussing any specific details of the past abuse.

¶ 37 At trial, Prester first asked Dr. Lambden if he believed that Banning suffered from delayed recovery syndrome. Dr. Lambden responded affirmatively, and then discussed the reasons for this opinion, including Banning's "history of domestic abuse." Dr. Lambden then indicated that individuals with a history of emotional or physical abuse have a thirty percent higher chance of developing chronic pain. No additional details were discussed.

¶ 38 We perceive no abuse of discretion in the trial court's rulings. The evidence was relevant to Banning's assertion that she developed depression after the accident and was also relevant to Prester's assertion that Banning suffered from delayed recovery syndrome due, in part, to previous domestic abuse. The relevance of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## VI.   Other Contentions

¶ 39 In light of our determination to remand for a new trial, we decline to address Banning's contention that the amount of the jury's award of damages was clearly erroneous, because the jury will consider these issues anew. Concerning Prester's cross-appeal, because we are reversing for a new trial, we must also reverse Prester's judgment for costs, and therefore his contention is moot. *See Grear v. Mulvihill*, 207 P.3d 918, 923 (Colo.App.2009) (when judgment is reversed, cost award cannot stand); *Blesch v. Denver Publ'g Co.*, 62 P.3d 1060, 1065 (Colo. App.2002) (not addressing the parties' remaining contentions due to remand).

¶ 40 The judgments are reversed, and the case is remanded for a new trial on damages.

Judge BERNARD and Judge BOORAS concur.